Good morning, and may it please the Court. Dan Wolfe for Appellant Union Pacific Railroad, and I'm going to do my best to reserve two minutes for rebuttal. This appeal presents a question of administrative law. Is an agency order that determines rights and obligations and results in legal consequences actionable in federal district court under the Administrative Procedure Act, or is it, as the Court below held, that it's a decision of the type of, in a category of decisions that is routed, channeled, as the government would say, to this Court of Appeals? The agency in question is the U.S. Railroad Retirement Board, which oversees railroad retirement benefits in a system that's roughly analogous to Social Security for railroad workers in this country. And among its functions is to determine whether certain employees are covered for purposes of railroad retirement benefits and whether their employers or certain employers within whose service they are have to pay into the system through payroll taxes to fund those benefits. Final coverage decisions, and I emphasize the word decisions, are appealable directly to a relevant Court of Appeals, which could be the Seventh Circuit where the Board sits, the D.C. Circuit, or the Circuit where the appealing party resides. In late 2021, I'm sorry, 2021, my client was notified by the Board that it was investigating whether certain employees, not U.P. employees, other employees, contract workers, were covered by the Railroad Acts. One of the implications of that would be possibly that U.P. would have to pay into the system to cover their benefits. So far, so good. Union Pacific does not dispute that the Board is vested with this authority from Congress to conduct these types of investigations and make coverage decisions. But the situation changed for purposes of this case in April of 2023 when the Board issued an order, and that did several things. It designated a hearing officer. It told that hearing officer, it directed that hearing officer to conduct a fact-finding hearing in furtherance of its investigation to get to the bottom of whether these employees were covered. And importantly, it designated an entity that has no legal interest in the outcome of that investigation, the Brotherhood of Maintenance-of-Way Employees Division, to be a party to the fact-finding hearing. That order — Kennedy. You're very narrowly defining interest. Well, I'm defining interest as a legal interest in the outcome. Certainly, there's a curiosity, but we — More than a curiosity. Come on. Fair enough. But let's say it's a substantial interest in sort of like how a certain dynamic between contract workers and railroad employers function together. Even if true, if this were like, say, a district court proceeding, Article III, we would talk about questions of standing. And is there an injury in fact? Is it traceable? And is it redressable? We would talk about, you know, what can be summed up as, is there a legal stake? Because lots of us, I mean, there's so much going on. Under federal rules, I mean, there's a difference. Same thing, but we're in the real world of federal court. The question is, okay, you can be heard. Can you be a party? Right. And party status requires Article III standing. And that's true of whether you're the party that brings it or intervenors, as this Court has held and numerous other courts have held. So to be — you have to have that legal stake. And here, the union is not the representative union for these workers. It can't be, because these employees aren't covered under the Railway Labor Act. So it — does it have an interest? Yes. Does it have a legal interest? No. Do we risk, though, if we adopt your position, of having a tremendous amount of potential piecemeal appeals, which is, oh, I don't like that decision. It's final agency. I don't like that decision. Then we have a bunch of these subsidiary cases under the APA that are coming to district court while the underlying proceeding should be going on. Respectfully, I suggest you won't. And now, on all these cases where the government argues there's no final agency action, they make that argument. But it was rejected in Bennett v. Speer. It was rejected by this Court and the Supreme Court in Hawks. The determination, the gating — the gating function is the APA itself and the two prongs. Is it the final word of the agency on that matter? And does it determine legal rights or obligations or result in legal consequences? And if the answer to that question is yes, then you have final agency action. Frequently, you're going to come up with the answer is going to be no. So, for example, the lower court said, well, this is just like an evidentiary ruling. No, it's not. Because evidentiary rulings between parties can be carried with the case. Well, there's not much time here. I'd like to get to my main concern. Okay. Which is the total absence of anyone citing the infamous All-Writs Act, 28 U.S.C. Okay. Section 350 — one of them. Because it seems to me that the reason you filed this suit is that the board would not accept protected order, the limitations in the protected order that you were urging. We could not get the board to agree that the union should have no right — Right. Yeah. That, it seems to me, there's no question we have jurisdiction under the All-Writs Act. Okay. To review that. Okay. But the typical rule — and I respect that question, Judge Loken — and so the typical rule is if you have a problem with agency action and you go to federal district court. The All-Writs Act core is it's got to be in aid of our future jurisdiction. And this clearly is. I think everybody agrees that the — but the trouble is, from your standpoint of confidentiality and labor relations and so forth, the horse is long out of the barn.  And so that seems to me why I got involved in the All-Writs Act as a second-year law student many years ago. This is a classic. So, question. Why shouldn't we retain jurisdiction, get supplemental briefing on the question of whether we can and should order the board at least to accept the — your proposed protective — the protective provisions you wanted? Your Honor, if this Court is of the view that this Court is the right Court to hear the case, we have no objection to what you just proposed. Well, counsel, did you, though, speaking of the All-Writs Act, you spent several pages saying you're not seeking mandamus review. Right. What I said is we haven't sought mandamus review. No, you said it's not reasonable, it's not this, it's not that. You've got pages of objections. And that's the trouble. You threw it under the mandamus bus. The All-Writs Act is not limited to the common law restrictions on mandamus. So let — and so it wasn't incumbent upon us to argue against ourselves. We were responding to the government's argument. I would suggest that if the Court is of the view that you've just expressed, Judge Loken, that the remedy would be to vacate the order, remand with direction under 28 U.S.C. 1631, to transfer the docket to this Court. And we absolutely would bring our — our — our brief and our appeal to this Court. You didn't request that, though, right? Well, we can — No, he's not in this brief, right? No, because we're defending the action we took. But we would certainly agree with that over the dismissal of the — of the lower court. But just to get back to that, you would say, I think what you said when you argued against it, but correct me if I'm wrong, is that you have another legal remedy, which is the APA, right? So — so if you're right about that, then I don't think you get resort to the All-Writs Act. Here's what I would suggest. What we said in our briefs was that there is no template for this. They cite track. We actually pointed out that this is not track. But it would be sort of an elaboration of track. And so we're sort of — because I haven't found a case and the government hasn't cited a case that is sort of like this on all fours. But the APA contemplates prohibitory writs, injunct — writs of — of mandamus-style writs. And so I do think that, although we haven't briefed it yet, I would agree with Judge from a court, and if it's this court, then we could either file a petition for review or the easiest thing is just to direct the district court to send the docket up to here. It sounds like you're — I mean, I don't mean to beat you up, but it sounds like you're arguing out of both sides of your mouth. Yes. Because the fact of the matter is, is — is you're right. It's a very broad vacater. There's a whole debate about whether or not you could vacate under the APA. I mean, it's a very broad — and so maybe — I guess what I'm getting at is maybe there's — both sides are right here, which is that it is — there are writs that are available, but the difference is you actually get them under the APA and not the All Writs Act. Well, we don't dispute that. This case arises under the APA whether it's in district court or this court, and there are mechanisms for transferring the docket. We think it's an APA case that is properly in district court because we haven't seen any case — not any case they cited that says it's not, and so naturally the default is go to district court. But we absolutely will take out justice from this court in the first instance if that's — if that's — if that's the desire. And I see my time is up. Well, I wasn't thinking of complete victory. See, I was thinking of — of a path that creates a reasonable possibility or maybe probability that we never have to mess with Thunder Base because if — if you get — if the protective order that you sought and was denied for reasons that befuddle me unless it was simply being hand-in-glove with the union, nobody — it may not matter that they get — whether the board then has to proceed with the union by subpoena or by this party as long as they don't get access to the company-sensitive data in the meantime, I would like to think it's not game over. It's game postponed, if you will. May I just quickly respond? Yeah. I'm not presuppose — when I said justice, that's just being heard. I'm not presupposing any outcome, but Judge Loken, the way you articulated it, that would absolutely be — You're going to go through with — forward with this with the union having a say. And we can argue — we are — you are arguing — The — the board — the board asking the union to have a say is not our problem. It's — it's the union seeing our confidential business information. Thank you. Mr. Aguilar. Good morning. May it please the Court. Daniel Aguilar for the U.S. Railroad Retirement Board. So I want to start with both final agency action and Albright's jurisdiction in this court, assuming that the claims get channeled. So on final agency action, the courts of appeals and the Supreme Court that have been deciding these cases under is there a statute that's channeling here, here that's the Retirement and Employment Acts, have held that it's not necessary to even really get to the consideration of whether it's final agency action. And so the most opposite case in this court is the radio station transmission equipment case. That was unquestionably final agency action. It was an FCC order about how to regulate certain equipment. And there the statute said you can channel that in the court of appeals. In an enforcement action in district court, this court held you cannot raise an objection to that final rule because that's the kind of thing that gets channeled. There it's unquestionably final agency action. It's still subject to channeling. I think something could be, which is kind of confounding, but final agency action under the APA, but not a final decision. The final decision would go to benefits. The final agency action would be we're making a decision on this protective order and we're done with that. This is the way it's going to be. And so I think those are different things. And the APA contemplates an action for final agency action. And the petition for review is final decisions. And so this is the only way, at least from my perspective, other than maybe the All Writs Act, it's the only way they can challenge it. So two responses to that, First Your Honor. They may overlap and be the same. We think they're different. But even assuming that they're the same, I think the most on-point case addressing that would be the D.C. Circuit's decision in Arch Cole. There it was a party objecting to its inclusion in an administrative proceeding. It said we shouldn't be a party to this. We shouldn't even have to engage in this. And there the D.C. Circuit separately held it's not final agency action. But at the threshold it said, this is a determination about who should be in an administrative proceeding. That ultimately gets channeled to the Court of Appeals when there is a final decision. So your objection to what is going on in the proceeding based on a claim that the agency is erring in applying its statute and regulations is quintessentially the kind of thing that gets channeled to the Court of Appeals. We think the same logic applies here. What they're arguing about is whether or not this union should be a party. And just to explain why. They're arguing about, I think, they're fine with it being a party. What they're arguing about is we don't want all of our, them to see all of our documents. I agree that's part of it. At JA89, paragraph 57 of the amended complaint, they say that the board designating the union as a party is unlawful, arbitrary and capricious and contrary to law. So I understood that that, their claim to harm is about this potential information, but the claim of error rests on designating them as a party. To your question, under the All-Writs Act, we understood that's being encompassed within the track, the telecommunications research in aid of jurisdiction. It's not too fast. I'm sorry. I apologize, Your Honor. I can't keep up. I apologize, Your Honor. So at page 26 of our answering brief, we said that if Union Pacific needs immediate judicial review, they could petition in this Court under the All-Writs Act for the mandamus jurisdiction. And I think the best case about why that would be appropriate, not for just withholding of agency action, but also to challenge agency action, is this Court's decision in automated matching systems versus SEC. There, it was a combined appeal, both a petition from review from the SEC and an appeal from a dismissal of a district court action challenging what the SEC had done in its administrative proceedings. And this Court held at 826 F. 3rd, 1024, that the district court lacked jurisdiction because plaintiff's claims alleging procedural deficiencies in the commission's work would go instead to the court of appeals because, quote, the appellate court has exclusive jurisdiction to hear suits. When you argue, I thought you were going to respond to the suggestion. It sounds like you're citing a case that would support it. Yes. I think the proper way, if Union Pacific thinks what it has, is irreparable injury, is to seek mandamus relief in this Court. And I was citing automated matching systems.  But it's not necessarily mandamus. I'm not exactly sure. It can be all the common law writs that are usable, so to speak, under 1631, prohibition and otherwise. So to the extent they are seeking that, we can then, in that jurisdiction, jurisdictionally proper action. So what's your response to my suggestion that we do a sui sponte? That is not what they have appealed here. They have not asked for that at any stage of the proceedings. Give me a case that says I can't do that. I'm sorry, Your Honor. I haven't looked into that question because. That's why I was going to keep it here and have a briefing on this. I think it would equally be as simple for Union Pacific, if it desired to do so, to file that petition on its own accord. And this Court could have jurisdiction. But to the extent that. Well, then you've got to mess around with Thunder Basin. And frankly, I don't want to. To the extent that the way the case has been briefed by the parties and presented to this Court as a question of whether or not the district court correctly exercised jurisdiction, that's the case on which the parties have joined briefing and the way that the case and the issue presented has been brought to this Court. And so for our position and the research that I've done and I'm able to speak to today. Okay. Is that. And all of the cases in this area. I've never thought we were limited to. And there's great judicial disagreement about whether courts should, appellate courts should be limited to what the lawyers say they want us to decide. I frankly have always been on the other side of that debate. To the extent that what's being challenged here is the district court's dismissal, I take Your Honor's suggestion to be that this Court could properly exercise jurisdiction. I think that only underscores why the district court's dismissal for lack of jurisdiction was correct in this instance. And if they were a jurisdiction. No, my proposal is to retain jurisdiction and get the, get the All-Writs Act issue, which appears to me to be the core of Union Pacific's problem with your client's handling of the case. Get that resolved and now let the parties decide if anything's left. And so to that point, Your Honor, I would direct you to the Supreme Court's decision in Thunder Basin at pages 212 to 215. There, the Supreme Court was considering a materially identical claim. There, what the mine company said was, the Department of Labor has designated union representatives to be these miners' representatives. The union members don't even work at the mine. These are people outside of the mine. They will be coming in and making inspections, gaining access to information, and coming in with the government's imprimatur. And doing that will irreparably injure us. And at pages 212 to 215 of the opinion. I frankly don't see the relevance of that. I think it's to the extent. To this situation here. It's to the extent that what I took Your Honor to be saying is that the crux of the issue is Union Pacific's claim that it will be irreparably injured. The Supreme Court in Thunder Basin said, we can accept that claim. And yet, you will receive meaningful judicial review through the channeling procedures. And that's why. That's the question. They won't. The horse is out of the barn. What I was. Classic all writs act situation. And they can petition for review in this court for that. Because, specifically because. You mean that the first set of confidential documents has to be handed over to the union before we can even consider this? That's not what I'm saying, Your Honor. So let me be. That is what you're saying. To the extent you're attempting to respond to my proposal. No. Suggestion. If I could clarify that and to be clear. When I said petition for review, I was also contemplating Your Honor's suggestion under the all writs act that this court could exercise jurisdiction immediately in aid of its eventual jurisdiction over any final board decision. And I agree with you on that. That would be jurisdictionally proper. Whether or not it's proper here of the court to do its response. That hasn't been briefed. So I can't say whether or not that's correct. But obviously, Union Pacific can file that. I think we're all in agreement on there. And to the extent that it was the claim that you can't get meaningful judicial review, that's what I was citing to the court's discussion in Thunder Basin on. Because it had a very similar material claim about union representatives getting access to information in the court held. You can get meaningful judicial review of that even at the end through the regular channeling scheme to the Court of Appeals. But you know, it becomes hard because you have to rely on Thunder Basin because you're relying on Thunder Basin. It's collateral. I mean, it's completely, it's a completely collateral claim. And it's really kind of effectively unreviewable. If you look at it in the collateral order doctrine sense, right, it kind of meets those requirements as well. And so, you know, I know we're not talking about the collateral order doctrine. Thunder Basin is separate. But I think we can take some lessons from that. And so I just don't, I just, I'm not sure that it is, it is reviewable. It's reviewable technically, but it's not, the harm is already done. So I think that then goes to the whether or not harm's already done or you can get meaningful judicial review is one consideration. On wholly collateral, I'd point you to this Court's decision in Pattison-Sand, where the Court held, you brought this claim before the agency and district court. It's a claim challenging what the agency is doing in this proceeding. And so, therefore, such claims fall squarely within the Commission's expertise and are not wholly collateral to the, it's to the Act's review provisions. So when the claim is, you're doing this proceeding, it's a claimed error about your statutes and regulations about what's happening during that proceeding. The courts have regularly held that that is not collateral in the same way that, for example, sort of an existential constitutional claim challenging the agency's existences. Can I follow up with one question, which is Loper-Bright. We always overplay Loper-Bright, but I wonder whether it plays a role here. The Supreme Court is spending less time deferring to an agency's own interpretations of their statutes and that they've governed them. And I just wonder whether your response runs directly into Loper-Bright. I don't think so, Your Honor. We're not arguing that deference is a matter here that depends on it. What the courts have routinely held is it's not a matter of deference. It's just a matter of what's happening in the agency proceedings. Obviously, the Court of Appeals will be able to construe issues of law de novo at the end of it, but obviously, too, the agency has some expertise in how should we be making these kind of decisions, what evidence should be improper, how did the regulations interact with each other. That's the limited purpose for it. Thank you, Your Honors. Thank you.  I think we understand the positions, and it's certainly been thoroughly briefed and the argument's been helpful, and it's a challenging situation. We'll take it under advisement.